[Civil No. 3942. Filed March 28, 1938.]

[77 Pac. (2d) 818.]

HOME OWNERS' LOAN CORPORATION, a Corporation, Appellant, v. THE CITY OF PHOENIX, a Municipal Corporation, and MARICOPA COUNTY, Appellees.

Mr. M. L. Ollerton, Messrs. Rawlins & Rawlins and Mr. Arthur M. Davis, for Appellant.

Mr. I. A. Jennings, City Attorney, Mr. Hess Seaman, Assistant City Attorney, and Mr. Richard F. Harless, Assistant City Attorney, for Appellee City of Phoenix.

Mr. John W. Corbin, County Attorney, and Mr. Lin H. Orme, Jr., Deputy County Attorney, for Appellee Maricopa County.

ROSS, J.—This is an action by the Home Owners' Loan Corporation to foreclose a mortgage on lot 23, block 2, Princeton Heights, an addition to the City of Phoenix, given to it by Imogene and S. T. Bekins, wife and husband, April 18, 1934, and placed of record April 27, 1934. Of those made defendants, only the County of Maricopa and the City of Phoenix filed answers. The county's answer was that it had a prior and su-

perior lien upon the premises for county and state taxes for the amounts and years following:

1934 $58.14
1935 59.39
1936 60.51, and for personal property taxes for the year 1934 in the sum of $9.34.

The city's answer was that it had a prior and superior lien on the premises for the amounts and years as follows:

| Real Estate: | | Personal Property: |
|---|---|---|
| 1934 | $28.94 | $3.69 |
| 1935 | 27.18 | 1.54 |
| 1936 | 28.24 | 2.40, |

together with interest, penalties and costs thereon; also city real estate and personal taxes for the year 1937.

The county and city prayed that their tax liens be decreed to be prior and superior to the plaintiff's mortgage lien, and the court so decreed. The plaintiff has appealed.

The reason for the appeal is not that the county and city are not entitled to prior and superior liens on the realty for taxes assessed and levied against the realty—it is conceded that they are entitled to such liens—but because they were given preferred liens on the realty for the taxes assessed and levied on the personal property of the Bekins, it being contended that the law gives no liens either to the county or city on the realty for the taxes on the owner's personal property.

We will refer to the parties as they were in the trial court.

Plaintiff's assignments present two questions for decision: (1) Whether the county and city under the law have a lien upon the taxpayer's real property for the taxes upon his personalty, and (2), if they do have, is it prior and superior to plaintiff's mortgage on such realty. These questions require a construction of our

revenue statutes, and of the city's charter and ordinances as they may bear on the city's rights. We will first consider the question as it relates to the county.

■ The right and power of the legislature to make the real property assessed to a person liable for the taxes on his personal property and to make such taxes a lien thereon prior and superior to any other lien or encumbrance is unquestioned. *Maricopa County* v. *Equitable Life Assur. Soc.*, 42 Ariz. 569, 28 Pac. (2d) 821. In *Walker* v. *Nogales Building & Loan Assn.*, 28 Ariz. 484, 237 Pac. 1094, the question was whether personal property taxes assessed to the owner of realty were a prior lien to a mortgage given on such real property before the tax lien attached. We held that, while the Civil Code of 1913, paragraphs 4845, 4902 and 4903, created a lien upon the realty of the person assessed for the personal property tax, the statutes did not make such lien prior and superior to the mortgage. We construed such provision of the statute as giving a prior and superior lien upon the property assessed for the taxes on such property, but not for taxes on other property. In the 1928 revision of the Code, paragraphs 4845, 4902 and 4903, *supra,* were consolidated into section 3101 to read as follows:

"Every tax levied under the authority of this chapter upon real or personal property shall be a lien upon all of the property assessed in the name of the particular taxpayer owning or controlling the same. The lien shall attach on the first Monday in January in each year, and shall not be satisfied or removed until such taxes, penalties, charges and interest are all paid, or the property has finally vested in a purchaser under a sale for taxes. The lien shall be prior and superior to all other liens and encumbrances upon all of the property contained in the assessment. Any and all of the property shall be liable for the whole of the tax, and a judgment against real property for non-payment of taxes thereon or on the personal property of the same person, shall not be avoided by show-

ing that the owner thereof was possessed of personal property out of which the taxes could have been made; but real estate occupied as a homestead shall not be charged for taxes other than the taxes due on such homestead.''

It will be noticed that this section changes the rule announced in the Walker case and makes ''every tax levied . . . upon real or personal property . . . a lien upon all of the property'' of the person assessed, and prior and superior to all other liens and encumbrances upon all of the property in the assessment. *Maricopa County* v. *Equitable Life Assur. Soc., supra.*

In 1931, at its regular session, the legislature enacted two laws, to wit, chapter 21 and chapter 106, concerning tax liens. Chapter 21 was an amendment of section 3101, Revised Code of 1928, and placed the law back to what it was when the Walker case was decided. But at the same session of the legislature, and at a later date, chapter 106 was enacted. It amended section 3101, *supra,* to read as follows:

''Every tax levied under the authority of this chapter upon real or personal property shall be a lien upon the property assessed. The lien shall attach on the first Monday in January in each year, and shall not be satisfied or removed until such taxes, penalties, charges and interest are all paid, or the property has finally vested in a purchaser under a sale for taxes. The lien shall be prior and superior to all other liens and encumbrances upon the property, except liens or encumbrances held by the state of Arizona. Personal property shall be liable for taxes levied on real property, and real property shall be liable for taxes levied on personal property, and a judgment against real property for non-payment of taxes thereon or assessed to the personal property of the same person, shall not be prevented by showing that the owner thereof was possessed of personal property out of which the taxes could have been made; but real property occupied as a homestead shall not be charged for taxes other than the taxes due on such homestead.''

Plaintiff contends that, because chapter 106 does not, by express language, as did paragraph 4845 and section 3101, *supra,* make the taxes on personal property a lien upon the real property of the person assessed, that there is now no such lien. It contends that the provision making real property liable for taxes levied on personal property is a general liability against the realty, to be enforced by judgment, levy, and execution, as we understand it.

It is insisted that, because chapter 106 in amending the previous law (paragraphs 4845, 4902 and 4903, Civil Code 1913, and section 3101, Revised Code of 1928), omitted the express provision giving a lien on the realty for personal property taxes, it must have been intended to discontinue such lien. In that connection, it is reasoned that the statutes of 1913 have the same provision as chapter 106 has with reference to real property being liable for personal property taxes, and personal property being liable for real property taxes. It is said this provision was not in the earlier legislation for the purpose of fixing a lien upon the realty for personal property taxes because that was expressly provided for; that such provision must have been inserted for some other purpose. But when it is said in section 3101, *supra*, 1928 Code, that "any and all of the property shall be liable for the whole of the tax," the word "liable" construed in connection with the previous provisions of the section can only mean that the taxes are a lien upon the realty. This addition to what had gone before doubtless is redundant and might have been omitted without affecting the meaning, but if the legislature wanted, for any reason, to repeat itself, that was its privilege.

We have carefully considered the point made and must admit that it is not entirely free from doubt. We would have to agree with plaintiff in its reasoning,

if chapter 106 stood alone. It does not stand alone. It is a part of the revenue laws of the state. There are many other provisions of such laws that bear upon the exact question to be decided. It is a rule of construction that statutes *in pari materia* must be read and construed together and that all parts of the law on the same subject must be given effect, if possible. With this rule in view, we look to other provisions of the law concerning the assessment and collection of personal property taxes.

The county attorney contends that, when the language of chapter 106, to the effect that "real property shall be liable for taxes levied on personal property," is properly construed, it means the taxes on personal property are a lien upon the realty of the person assessed. He suggests that the methods of assessing and collecting personal property taxes shed some light on the meaning to be attached to said quoted phrase. Such methods are, if the taxpayer have no real property, to require him to pay the taxes on his personal property to the assessor when it is assessed, but, if he have realty which in the assessor's judgment is of sufficient value to pay both his real and personal property taxes, he is not required to pay his personal property taxes when assessed, section 3081, Revised Code of 1928, but his assessment on both real and personal property is entered upon the assessment roll for equalization and extension thereon as provided in section 3094, Revised Code of 1928, as amended by chapter 60, Laws of 1933. And after the taxes are equalized and extended on the tax roll, the county treasurer notifies the taxpayers

"that one-half of the taxes on all personal property *secured* by real property, and one-half of the taxes on all real property, will be due and payable on the first Monday in September" etc. (Italics ours.) Section 3110.

Section 3109, Revised Code of 1928, requires the assessor at any time during the calendar year to assess and collect "taxes on all unsecured personal property." When the personal property tax is secured by realty, as where it is entered upon the assessment roll against the taxpayer, the treasurer, and not the assessor, collects it. The assessor's authority is limited to collecting the unsecured personal property tax.

Paragraph 4903, section 3101, and chapter 106, *supra,* also provide that the homestead "shall not be charged for taxes other than the taxes due on such homestead." The homestead is the only real property not *charged* with or *liable* for the personal property taxes of the owner.

At the same session of the legislature that passed chapter 106, *supra,* there was enacted chapter 103, providing, among other things, for the collection of delinquent taxes. Section 18 thereof and amendments, chapter 72, Laws of 1933, and chapter 30, Laws of 1935, provide:

"All real property upon which the taxes, including personal property taxes secured thereby, are unpaid and delinquent, shall be subject to sale as herein provided" and sold "for the taxes, penalties, interest, and charges thereon, and taxes, penalties, interest and charges assessed against the owner thereof for personal property."

Thus the realty is security for the personal property taxes. Property taxes are not a charge against the owner but against the property. The proceeding to collect taxes is one *in rem.* When the law makes one class of property security for taxes on another class and authorizes the property to be sold to satisfy the tax in case of delinquency, although it does not call the right given "a lien" that is what it is in effect. So, when the legislature provides, as it does in chapter 106, *supra,* that "real property shall be liable for taxes

levied on personal property," and further provides that the taxing unit's remedy to collect such taxes is to condemn the security in judgment and sell it in satisfaction of the delinquent taxes, it would seem that it was intended that the taxing unit should have a lien upon the realty for the personal property tax.

Plaintiff cites as supporting its views *Board of Commrs. of Routt County* v. *Whitt,* 74 Colo. 129, 219 Pac. 217, and *Estate of Romero* v. *Willoughby,* 10 Porto Rico 69. The law under discussion in the first case was very different from ours and for that reason the decision is no authority for plaintiff's contention. The court was construing a provision of the Colorado statute directing the county treasurer to sell the taxpayer's real estate to satisfy a tax lien thereon "and taxes, interest, and charges assessed against the owner thereof for personal property" and it was held that such statute gave no lien on the realty for personal property taxes. Apparently Colorado has no provision in its statutes making the real property *liable* for personal property taxes, or making the realty *security* for such taxes, or making such taxes a *charge* on the realty, as our statutes do. The other case decides that, with regard to a tax assessed against the personal property, the law does not give "it the character of a charge or lien on the real property of the taxpayer." Those decisions no doubt were right under the law of their jurisdiction but have no application here.

■ But the liens which are prior and superior under chapter 106 are liens for taxes against the property assessed and not for taxes on other property. The text in chapter 106 in that particular is so much like paragraph 4845, *supra,* that we think it is ruled by the Walker case, which held that a lien for personal property taxes attaching after a realty mortgage was recorded was inferior to the mortgage lien. Since the county's personal property tax lien for 1934

had attached to the realty before plaintiff's mortgage, such lien is superior to the lien of the mortgage.

The court's decree gave the city a preferred lien on the realty for personal property taxes that attached before the plaintiff's mortgage lien attached, as well as for taxes accruing subsequently. The state law, as we have seen, does not prefer a tax lien on the realty for personal property taxes attaching subsequent to the lien of the mortgage, and this difference arises because the city's charter and Ordinance No. 1870 thereof are broader in that respect than the state tax law. Plaintiff contends that the provision of the state law concerning the tax lien controls and that the provisions of the city charter and ordinance, giving a preferred lien on the realty for taxes on personalty attaching after the mortgage lien, are void.

We believe that this contention must be sustained. The city charter provides in section 2, chapter XVIII that:

"The Commission shall by ordinance provide a system for the assessment, levy and collection of all city taxes, not inconsistent with the provisions of this charter."

In pursuance of such direction the city commission on October 11, 1933, passed Ordinance No. 1870 providing a taxing system for the city, section 7 of which clearly gives a lien on the realty for personal property taxes and makes such lien

"prior and superior to any and all liens theretofore or thereafter existing upon or attaching to said property, except only liens thereon for state and county taxes. . . . "

The ordinance also in section 5 provides that the tax levy on the equalized assessment roll shall be made by the city commission not later than the third Tues-

day of July in each year. Section 3100, Revised Code of 1928, being a part of the state revenue laws reads:

"*County and city tax levies; limitation on increase.* The board of supervisors of each county, and the governing body of each town and city in the state, on or before the third Monday in August in each year shall fix, levy and assess the amount of taxes to be levied, designate the amounts which shall be levied for each purpose appearing in the adopted budget, and fix and determine a rate on each one hundred dollars of the taxable property shown by the finally equalized valuations of property (less exemptions) appearing upon the tax rolls for such fiscal year."

 Here we have the state legislature conferring on the governing body of the city the power to make the annual levy of taxes to meet its budget and also the charter of the city and its Ordinance No. 1870 conferring on the governing body the same duty and power. Under such circumstances, where the two legislative bodies have provided for a tax lien upon the realty for personal property taxes, one making such lien prior and superior to mortgage liens placed on the realty after the tax lien attaches but inferior to a mortgage lien attaching before a tax lien, and the other making the tax lien prior and superior to the mortgage liens, whether attaching before or after, the question is, Which legislative act should be followed? Unquestionably the city possesses the power to supply itself with the means to sustain life and to that end may assess and collect from its property owners taxes for its corporate purposes. As we said in *Barrett* v. *State,* 44 Ariz. 270, 36 Pac. (2d) 260, 261:

"It is plain that the securing of revenue for a city is peculiarly and emphatically a matter of local concern."

 It also is apparent that taxation for governmental or local purposes is one upon which both

legislative bodies are competent to legislate. The power of taxation under the Constitution inheres in the sovereignty of the state and may be exercised only by the state legislature. Any power over taxation possessed by municipalities is delegated. Phoenix operates under what is called a "home rule charter" which was framed and approved by its inhabitants under the provisions of section 2, article 13, of the Constitution. Such section requires that a charter of that kind shall be "consistent with, and subject to, the Constitution and the laws of the State" and when approved

"shall become the organic law of such city and supersede any charter then existing (and all amendments thereto), and all ordinances inconsistent with said new charter."

Under such a grant of power there is nothing to indicate that a "home rule charter" adopted by a city delegates to such city the exclusive power over the subject matter of taxes or liens for taxes upon property situated within the city. It is a matter of state-wide concern that liens for personal property taxes on real property should be uniform throughout the state so that those loaning money on realty in the state may have the same security whether the realty is within or without the city. We said in *Clayton* v. *State,* 38 Ariz. 466, 300 Pac. 1010:

"Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city express power to legislate thereon, both jurisdictions may legislate on the same subject."

Where both bodies have legislated on a subject, and there is a conflict, we are satisfied the legislation by the city commission should give way to the act of the state legislature. That being true, the city's liens

for personal property taxes are governed by section 3101, *supra,* as amended by chapter 106, which, as we have seen, prefers the mortgage lien to tax liens for personal property taxes attaching after the mortgage lien. The city's tax lien for personal property taxes for the year 1934 attached on the first Monday of January and the mortgage lien on April 27, 1934, and is prior and superior to the mortgage lien, but the tax liens for subsequent years are inferior to such mortgage liens.

The judgment is modified accordingly and, as modified, affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.